No. 04-736

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 230N

RICHARD SANDERS,

        Plaintiff and Appellant,

   v.

STATE OF MONTANA DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES,
CHILD SUPPORT ENFORCEMENT DIVISION,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                 In and for the County of Musselshell, Cause No. DV 2002-022
                 The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Richard Sanders, *pro se*, Roundup, Montana

        For Respondents:

        Ann Hefenieder, Special Assistant Attorney General, Montana Department
        of Public Health and Human Services, Child Support Enforcement Division,
        Helena, Montana

                          Submitted on Briefs:  May 3, 2005

                                 Decided:  September 14, 2005

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Richard Sanders (Sanders), *pro se*, appeals from the Order of the District Court of the Fourteenth Judicial District, Musselshell County, dismissing his claim against the State of Montana, Department of Public Health and Human Services, Child Support Enforcement Division (CSED). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Sanders and Laura Lonebear (Lonebear) were married on November 18, 1979, in Forsyth, Montana. Lonebear is a member of the Northern Cheyenne Tribe; Sanders is not. The couple has three sons who are enrolled members of the Northern Cheyenne Tribe. All three are now emancipated.

¶4 On September 29, 1982, Lonebear filed an action for divorce in the Northern Cheyenne Tribal Court in Lame Deer, Montana. Sanders objected to the tribal court's exercise of jurisdiction over him. The tribal court concluded that it had jurisdiction over the parties and the subject matter of Lonebear's action. Thus, on December 10, 1982, the tribal court issued a decree which dissolved the marriage, divided the couple's property, awarded custody of the children to Lonebear, and ordered Sanders to pay child support in the amount

2

of $150.00 per month, per child. As Sanders was incarcerated at the time, the decree specified that he meet this obligation "[w]hen he is employed."

¶5 Sanders instituted an action in federal district court, challenging the tribal court's jurisdiction to dissolve the marriage. The federal district court concluded that the tribal court's exercise of jurisdiction was proper. Sanders appealed to the Ninth Circuit Court of Appeals, which affirmed the district court's decision without a published opinion. Sanders then appealed to the United States Supreme Court, which vacated the judgment and remanded the matter for further consideration in light of *National Farmers Union Ins. Cos. v. Crow Tribe of Indians* (1985), 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818. *Sanders v. Robinson* (1985), 472 U.S. 1014, 105 S.Ct. 3472, 87 L.Ed.2d 609. On remand, the Ninth Circuit concluded that the tribal court had jurisdiction over the marriage dissolution action. *Sanders v. Robinson* (9th Cir. 1988), 864 F.2d 630, 634, *amended on other grounds*, 1988 U.S. App. LEXIS 17047.

¶6 Sanders also appealed the dissolution decree to the Northern Cheyenne Appellate Court, which upheld the exercise of tribal jurisdiction, but remanded the custody determination and property division in order to correct due process violations. Having addressed these issues, the court proceeded to uphold Sanders' child support obligation contained in the dissolution decree, stating "[t]he Dissolution Decree issued in this matter on December 10, 1982, is affirmed in all other aspects."

¶7 The CSED initiated its effort to enforce Sanders' child support obligation in February of 1986. On July 10, 1986, the CSED issued a contested case Notice of Intent to Withhold

3

Income. A hearing was held on the Notice, and an order was issued determining that income withholding was appropriate. On February 23, 1996, the CSED issued a contested case Supplemental Notice of Intent to Withhold Income. Sanders received the Notice at his home in Tijuana, Mexico, together with a Request for Hearing form. Sanders did not request a hearing, but returned the documents to the CSED.

¶8 Pursuant to a request by Sanders, the tribal court's decree was modified on June 4, 1997. Sanders signed the modification consent order, indicating his consent to the terms of that order, which required him to pay child support in the amount of $63.00 per month, per child, regardless of his employment status. Sanders requested and received hardship adjustments of withholding amounts for past-due support on six occasions between 1997 and 2000. In 1998, Sanders requested an administrative review on the CSED's interception of his federal income tax refund. The administrative review was convened on May 12, 1998, but Sanders did not appear in person or by telephone.

¶9 On April 19, 2002, Sanders instituted an action in state District Court, challenging the CSED's efforts to enforce the child support obligation contained in the tribal court's dissolution decree. On January 3, 2003, the District Court held a hearing on the matter. On March 14, 2003, the District Court issued its Findings of Fact, Conclusions of Law and Order, dismissing Sanders' cause of action against the CSED. In doing so, the District Court concluded that issues regarding the validity of the tribal court's dissolution decree were *res judicata*, having been determined by the Northern Cheyenne Appellate Court and the federal courts. The District Court also concluded that the Northern Cheyenne Appellate Court's

4

affirmation of Sanders' child support obligation was *res judicata*. Further, the District Court concluded that Sanders could not assert a statute of limitations challenge to the CSED's child support collection actions because he waived the defense during the last contested case action when he failed to request a hearing. Finally, the District Court determined that Sanders owed past-due child support in the amount of $21,224.45, but later amended the calculation and determined that Sanders owed $19,011.45. The calculation accounted for, *inter alia*: (1) child support payments made to Lonebear by Jack Badhorse, who was Lonebear's common law husband for a period of time after the dissolution of her marriage with Sanders; and, (2) public assistance benefits received by Lonebear.

¶10    The CSED undertook enforcement action against Sanders, proceeding based on an incorrect calculation of his debt. Consequently, Sanders filed a motion in the District Court for a hearing on the issue. The CSED acknowledged the error and modified its enforcement efforts accordingly. Thus, the District Court denied Sanders' motion for a hearing, finding the issue moot. Sanders now appeals to this Court, challenging the District Court's conclusions of law.

**STANDARD OF REVIEW**

¶11 We review a district court's conclusions of law to determine whether they are correct. *Hedges v. Woodhouse*, 2000 MT 220, ¶ 8, 301 Mont. 180, ¶ 8, 8 P.3d 109, ¶ 8.

**DISCUSSION**

¶12 **1. Did the District Court correctly conclude that the CSED was entitled to enforce the child support provisions of the tribal court's dissolution decree?**

¶13 Sanders argues that the child support provisions of the tribal court's decree are invalid, and thus the District Court improperly condoned the CSED's enforcement of those provisions. In supporting this argument, Sanders presents an array of contentions. First, he claims that the tribal court decree was obtained without due process of law, and that enforcement of the decree further violates his due process rights. Sanders fails to cite to legal authority or present specific argument supporting these claims, as required by Rule 23(a)(4), M.R.App.P. Thus, we decline to address these arguments. *Gollehon v. State*, 1999 MT 210, ¶ 10, 296 Mont. 6, ¶ 10, 986 P.2d 395, ¶ 10.

¶14 Sanders also argues that the CSED is "imposing ex-post facto laws" upon him; that the documentation of the tribal court proceeding is insufficient; that further proceedings in the tribal court were necessary; that the tribal court judge should not have presided over the dissolution proceeding; and, that neither the District Court or the CSED have shown a compelling interest to honor the tribal court's decree. We decline to address these contentions because they are not supported by citation to legal authority, as required by Rule 23(a)(4), M.R.App.P. *Gollehon*, ¶ 10. Nor are these arguments presented with the precision

6

required of appellate briefing. As we have previously held, this Court is not obligated to develop legal analysis that may lend support to a litigant's position. *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19.

¶15    Sanders further claims that the Ninth Circuit's opinion in *Sanders*, 864 F.2d 630, invalidated the child enforcement provisions of the tribal court's decree. In fact, the Ninth Circuit rejected Sanders' contentions regarding the validity of the tribal court's decree. The court primarily addressed an issue of jurisdiction, concluding that the tribal court had jurisdiction over the marriage dissolution action. Thus, we must reject Sanders' argument, as it misconstrues the Ninth Circuit's decision.

¶16    We conclude that the validity of the decree has been determined by all courts of appropriate authority. As noted above, the tribal appellate court upheld Sanders' child support obligations when it affirmed the tribal court's dissolution decree "in all other aspects." The record in this case does not demonstrate that any tribal court has vacated or amended the dissolution decree. Sanders presents various arguments challenging the District Court's conclusion that the decisions rendered in the tribal court system are *res judicata*. The record does not support these contentions. Moreover, Sanders does not support these contentions with citation to legal authority or specific argument, as required by Rule 23(a)(4), M.R.App.P. Accordingly, we find no merit in Sanders' challenge to the validity of the child support provisions contained in the tribal court's decree, and therefore conclude that the District Court properly upheld the CSED's enforcement efforts.

**¶17 2. Did the District Court correctly conclude that Sanders was barred from asserting a statute of limitations argument?**

¶18 Sanders argues that the District Court improperly precluded him from asserting a statute of limitations argument in challenging the CSED's enforcement efforts. In support of this argument, Sanders claims that he was not aware of his right to assert a statute of limitations argument when he received the CSED's Supplemental Notice of Intent to Withhold Income, and suggests that the CSED should have informed him of such. Further, Sanders argues that his due process rights were violated when the District Court precluded him from asserting a statute of limitations argument. We decline to address these contentions because Sanders provides no supporting legal authority as required by Rule 23(a)(4), M.R.App.P. *Gollehon*, ¶ 10.

¶19 Section 37.62.909(4) of the Administrative Rules of Montana provides that "[w]hen requesting a hearing, the person must include with the request a brief statement of any affirmative defense the party may have to the contested case notice." Sanders had the opportunity to request a hearing and assert a statute of limitations argument upon his receipt of the CSED's Supplemental Notice of Intent to Withhold Income. Because he did not do so, we conclude that the District Court properly prohibited Sanders from asserting a statute of limitations argument in challenging the CSED's enforcement efforts.

¶20 **3. Did the District Court correctly conclude that the CSED retains authority to enforce Sanders' child support obligation despite the termination of Lonebear's public assistance benefits?**

¶21 In 1981, Lonebear assigned her support rights to the State of Montana in exchange for public assistance benefits, which were terminated and reinstated periodically until November of 1997, when the benefits terminated permanently. Sanders asserts that the CSED lost its authority to enforce his child support obligation when Lonebear's assignment of her support rights terminated.

¶22 Under § 53-2-613(2), MCA, the assignment of child support rights by a recipient of public assistance occurs by operation of law. Under § 53-2-613(3)(c), MCA, the assignment remains in effect with respect to the amount of any unpaid support obligation accrued under the assignment that was owed prior to the termination of public assistance to a recipient. Moreover, § 40-5-203(1), MCA, allows the CSED to enforce child support obligations on behalf of individuals who are not receiving public assistance benefits. Thus, we conclude the District Court correctly determined that the CSED retains authority to enforce Sanders' child support obligation.

## CONCLUSION

¶23 In conclusion, we note that Sanders raises several other arguments. He claims to have suffered racial discrimination in the tribal court proceedings, which he characterizes as a "parade of horribles." Further, he argues that his child support obligation has been adequately satisfied. Finally, he presents a vague argument regarding the issue of comity, and contests his child support obligation based on an alleged "de facto adoption" of his

children by Jack Badhorse. Sanders fails to support these contentions with citation to legal authority or specific argument, as required by Rule 23(a)(4), M.R.App.P. As such, we decline to address these contentions. *Gollehon*, ¶ 10.

¶24 We conclude that Sanders has failed to demonstrate any error in the District Court's conclusions of law. Accordingly, we affirm.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS